SARAH ANN COOKE, Respondent, *v.* HYRAM S. YOUNG, Appellant.

1. Occupancy of "Town Lot."—It is a well settled rule in this court that an actual, *bona fide* personal occupancy of the ground claimed is necessary to entitle any one to the deed of the Mayor for the government title.

2. Occupancy of "Town Lot"—Agency.—No one can take up city lots by means of agents, and no such right can be recognized in ascertaining to whom the government title shall go, but every claimant must himself be an actual settler or occupant, taking up the land for his own use and benefit and not for another.

3. Equitable Rights Not to be Considered.—Whether any equities exist between a claimant and another party that would compel a conveyance of the after-acquired title is a matter which the court has nothing to do in an application for a Mayor's deed.

4. Agency Does Not Exist in Case at Bar.—Admitting that a party can hold a lot by or through an agent, the facts of the case at bar reviewed and the relation of principal and agent held not to exist.

5. Gift Perfect Without Deed.—After the gift of real estate consisting of an unpatented town lot is executed by the donee taking possession, even in the absence of any deed from the donor, the latter cannot then change his views so as to entitle him to claim the property.

Appeal from the Third Judicial District Court.

The Supreme Court at the hearing of the cause found the following facts:

*First*—That lot number two (2), block seventy-eight (78), plat "A," is embraced within and forms a part of the entry of public lands made on the twenty-first (21st) day of November, 1871, for the use and benefit of the occupants thereof, residing in Salt Lake City, under the provisions of an act of Congress entitled "An Act for the relief of the Inhabitants of Cities and Towns upon the Public Lands," approved March 2, 1867.

*Second*—That the ground in controversy was originally claimed by J. M. Grant, who sold his claim to William Streeper, in about the year 1852.

*Third*—That said Streeper built upon and improved the property, and resided thereon with his family until his death in 1856.

*Fourth*—That after said Streeper's death his widow and children, six in number, continued to live upon the ground until 1857, when they removed therefrom, and none of them have ever resided upon or in person occupied any portion thereof since.

*Fifth*—That the widow of said Streeper afterwards married William Wadsworth, and she, said Wadsworth, and two of her children by Streeper, executed a quit-claim deed to Brigham Young of said property, said deed being witnessed by but one witness, and dated 20th January, 1860.

*Sixth*—That subsequent to that deed to Brigham Young, said Brigham Young exercised control over the ground by directing respondent to occupy it, and not otherwise.

*Seventh*—That early in 1860 said Sarah Ann Cooke entered upon the land in controversy, the west half of lot two (2) in block seventy-eight (78), plat "A," specified in first of these findings, and occupied the same as a residence, by permission of Brigham Young, and has continuously, ever since 1860, resided upon the land in controversy with her family, and has ever since that date owned and occupied said parcel of ground in her own right.

*Eighth*—Neither said Brigham Young nor said Hyram S. Young has ever been in the occupancy of said ground.

*Ninth*—That said respondent was an actress in the theatre of Brigham Young for seven years prior to his giving her the possession of said ground, and was such actress for five years after that date. That she was organist at the Tabernacle, the principal place of worship in Salt Lake City, of the Church of Jesus Christ of Latter Day Saints, of which church said Brigham Young was leader and head. That her husband had been missionary of said church and afterwards policeman in Salt Lake City, and was killed while acting as such policeman. That being without a home and in straightened circumstances

said respondent went to Brigham Young for help, after the death of her husband. He purchased the property in question for $500, and told her to take possession and improve it. That before she did take possession her son offered to pay Brigham Young for the place in installments, but Brigham Young refused to receive pay therefor, saying that he wanted no pay, but told the son that he had bought the place for his mother, and to go ahead and improve the place and make it a good comfortable home for his mother. That for six or seven years the respondent continued to occupy and improve the place, paid the taxes upon it, and at the end of six or seven years said Brigham Young for the first time gave her to understand that he still claimed to own the property. Respondent and her son had put improvements upon the property to the amount of $2,000, during these six or seven years, amongst which was an orchard. That fearing lest by the power of Brigham Young, she should be deprived of her property, she yielded to his demands for money, and paid him $180 in various payments, and consented to sign an order, presented by Brigham Young's agent, for $2,000, voted as such agent said, to her by the city by reason of her husband being killed. That such agent told her that if she desired to save her property, then to sign the order, and under such circumstances she signed it. That she never agreed to pay Brigham Young the said $4,000 claimed by him for said property, but refused to sign a paper to the effect that she would pay the same, although she paid money to Brigham Young as stated, and after said payment she asked Brigham Young for the deed and he refused to give the same upon the ground that she would give the place to her sons and they would sell to the " Gentiles." That said Sarah Ann Cooke afterwards sued Brigham Young for the $2,000 and the $180 and interest, obtained from her as aforesaid, and recovered the same on judgment.

*Eleventh*—That said Brigham Young, on the 28th day of February, 1872, by deed duly executed, conveyed all his interest and estate in said lot to the appellant, Hyram S. Young.

*Twelfth* —That at the time of the entry of said land from the United States, and of the filing of the several declaratory statements of the claimants thereto, and for many years prior thereto, said Brigham Young, said Hyram S. Young, and said Sarah Ann Cooke, were residents and inhabitants of the said city of Salt Lake City.

*Williams & Young*, for appellant.
No brief on file.

*Baskin & DeWolfe*, for respondent.
No brief on file.

BOREMAN, J., delivered the opinion of the court:

The appellants and respondents were adverse applicants under the " town site " laws, for the government title to a certain parcel of land in Salt Lake City. The Probate Court having awarded the ground to the appellant, the respondent appealed to the District Court, wherein judgment was rendered for the respondent, and thereupon the said Young appealed to this court.

A person named Wadsworth was in possession of the ground in controversy in 1860. He sold his claim to Brigham Young and then gave up the possession. Brigham Young authorized the respondent to take possession and occupy the property, and from 1860 to the present time the respondent has occupied and possessed the ground.

In February, 1872, Brigham Young deeded the ground to Hyram S. Young, the appellant. The respondent claims title by her actual *bona fide* occupancy, and the appellant sets up no claim to individual occupancy by himself or his grantor, Brigham Young, but he claims the respondent to be his tenant and that, therefore, her occupancy was his occupancy.

This court has heretofore, in several cases, held that an actual, *bona fide* personal occupancy of the ground claimed was necessary to entitle anyone to the deed of the mayor for the government title. *Cain Heirs* v. *Young*, 1 Utah R. 361;

17

*Hussy* v. *Smith*, 1 Utah R. 129; *Pratt* v. *Young*, 1 Utah R. 347.

In these cases it is also held that no one can take up these city lots by means of agents, or rather that no such rights could be recognized in ascertaining to whom the government title should go, but that every claimant must be himself an actual settler, an occupant taking up the land for his own "use and benefit," and not for another. The policy of the law was to give the land to actual settlers and not to speculators. Whether any equities exist between a claimant and another party, that would compel a conveyance of the after-acquired title, is a matter with which the investigation is not to be concerned. The only question to be considered is as to whether either party has complied with the law; both could not do so. If neither had done so, then neither should have the title.

The evidence clearly shows that respondent has been the only occupant of the ground since 1860. She is not alleged to have been a trespasser. Her possession and occupancy were lawful and rightful. She had to claim the land for herself, and not as employee or agent of another.

But if it be considered that she could take up and hold the ground only as agent of another, then the question would arise: Does the evidence show her to have been the agent, the tenant, of appellant or of his grantor? The respondent, feeling that she had a claim at least upon the charity of Brigham Young, called upon him for help, as she was without a home and in straightened circumstances. He purchased the property in controversy for $500, and told her to take it and make a home of it. He refused to accept any portion of the pay for it before respondent moved upon the ground, but said that he wanted no pay. For six or seven years she was allowed to possess the land undisturbed, paying the taxes and claiming it as her own. She and her son had put improvements upon it in the meantime to the extent of $2,000. Thereupon he laid claim to the place, and demanded to be paid $4,000 for it.

She never agreed to pay the amount, but feeling that Brigham Young could deprive her of her property if he saw fit, she sought to save it to herself and children by consenting to what she deemed extortions. Brigham Young had not declined to give her a deed by reason of any of the money claimed being unpaid, but solely upon other grounds. If Brigham Young meant what he said, he certainly intended this property to become that of respondent. We cannot say that when he told her to take and make a home of it, and then refused any pay therefor that he did not intend her to have it as a home, but that as soon as she had improved it so as to become a comfortable home she was to give it up or else pay an extravagant price for it. The language and actions of Brigham Young cannot be fairly interpreted, as we think, in any other light than as his making a gift of the property in controversy to the respondent. And it was executed, and he could not afterwards change his views so as to entitle him to claim the property.

And, so far as the government title was concerned at least, no deed was necessary from Brigham Young to respondent. Respondent was in possession and occupancy, and rightfully so, and that was as far as it was necessary to look to ascertain to whom the title should go.

Under all of the circumstances, therefore, we do not deem that there was error in the judgment of the District Court.

The judgment is affirmed, with costs.

SCHAEFFER, C. J., and EMERSON, J., concurred.